RICHARDS *v.* MICHIGAN CENT. R. Co. *et al.*, (three cases.)

*(Circuit Court, N. D. Illinois, N. D.* October 21, 1889.)

PATENTS FOR INVENTIONS—GRAIN-TRANSFERRING APPARATUS.

Letters patent granted November 18, 1884, to Edward S. Richards, for a "grain-transferring apparatus," covered a combination of (1) a stationary building; (2) two railway tracks passing into or on opposite sides of such building; (3) elevating apparatus; (4) an elevated hopper-scale, with a valve in the bottom; and (5) a discharge-spout, for discharging the grain from the bottom of the hopper into the car on the opposite side from the car from which it was taken. *Held,* that the combination was not patentable, as it was but an aggregation of old parts, with nothing done by either which it did not do when acting separately.

In Equity. On bills for infringement of patent.

*W. A. Gardner* and *Armstrong, Reed & Dyche,* for complainant.

*G. Payson* and *Sidney Smith,* for defendants.

BLODGETT, J. These are bills in equity, charging the respective defendants with the infringement of a patent granted to complainant, November 18, 1884, for a "grain-transferring apparatus," and praying an injunction and accounting. The apparatus described in and covered by the patent consists of a stationary elevator building, with two railroad tracks passing into or along-side the building on opposite sides, (I see no reason why the device would not operate equally as well if the tracks passed along-side the building as if they passed into it,) so that ordinary grain-carrying railway cars can stand on each track opposite, or nearly opposite, to each other; an elevating apparatus, so arranged as to elevate grain from the chute, or pit, into which it is shoveled or dumped from the cars to a scale-hopper in the upper part of the building; and a spout leading from the bottom of the hopper, so as to carry the grain, after it is weighed, to the car on the opposite track. The patent contains two claims:

"(1) The combination of a fixed or stationary building, the tracks, F and G, an elevator apparatus, and elevated hopper-scales, having a fixed or stationary hopper, provided with a valve or slide in its bottom, and a discharge spout, P, adapted and arranged for discharging the grain directly from the said hopper into a car, substantially as specified, and for the purposes set forth. (2) The combination of a fixed or stationary building, the tracks, F and G, two or more elevating apparatus, a series of two or more elevated hopper-scales, having fixed or stationary hoppers, each having a valve or slide in its bottom, the discharge spouts, P, P, adapted and arranged for discharging the grain directly from the said hoppers, respectively, into a correspondingly arranged car, a horizontal conveyer, the chutes, J, J, having therein the doors or valves, K and L, and the slides or doors, O, O, all arranged, substantially as shown and described, with relation to each other, and for the purposes set forth."

Defendants have demurred to the bill on the ground that the patent does not show a patentable combination, but only shows an aggregation of old parts, none of which perform any new function in the combination from what they did when operating separately. As the claims of this patent are only combination claims, and none of the parts combined are claimed as new, it may be presumed that the parts or elements so combined are all old. *Gould* v. *Rees*, 15 Wall. 191. *Brown* v. *Selby*, 23 Wall. 224. The patentee does not claim to have invented an elevator building, nor a grain-elevating apparatus, nor a hopper-scale, nor a spout to empty the hopper, nor railroad tracks, nor railroad cars. The court will assume from common knowledge that it was old at the date of this patent to construct buildings with railroad tracks running into or alongside of them, and with apparatus in such buildings for elevating into the upper part thereof grain brought in cars upon such tracks; and that it was old to elevate the grain into a hopper-scale, where it was weighed, and from whence it was run into bins by a spout. It was also old to load cars by running grain into them from a bin in an elevator building by means of a spout.

The claims in the patent in question are for a combination of the following elements or parts: (1) A stationary building; (2) two railway tracks which must pass into, or on the opposite sides of, such building; (3) elevating apparatus; (4) an elevated hopper-scale, with a valve or slide in the bottom; (5) a discharge spout, adapted for discharging the grain directly from the bottom of the hopper into the car on the opposite side of the building from the car from which the grain was taken. The conveyer and additional chute and additional delivery spout of the second claim being only used when the car to be unloaded does not stand directly opposite to the one into which its contents are to be transferred, hence there is a provision for duplicating some of the operative parts, and adding the conveyer. Now, it is evident that none of the parts or elements of this combination perform any different function in the combination than they respectively did when operating separately; and it is equally clear that the result of the operation of these elements as combined is the same, and no more, than the sum of the results of these elements when operating separately. The railroad tracks bring the cars to the building; the building supports the elevating apparatus; the elevating apparatus elevates the grain to the hopper of the hopper-scale; and the discharge spout delivers the grain to the car opposite to that from which it is taken, instead of delivering it into a bin; the receiving car being nothing more than a substitute for the bin located in the elevator building, and resting on the railway track, instead of resting on some part of the building, as the bin does. It therefore seems to me that the combination described in the patent and covered by the claims is nothing but an aggregation of old parts, with nothing done by either of the parts or by all when combined which was not done by them when acting separately.

The specifications of the patent seem to assume that the combination of the building, the elevating apparatus, the hopper-scale, and the dis-

charge spouts from the bottom of the hopper were old, and that the only new element introduced into combination with them was the railroad tracks; but it is obvious that the railroad tracks in this combination perform no function which would not be performed by an ordinary wagon road, upon which a wagon loaded with grain could come into or along-side the elevator building, so that its load of grain might be shoveled into the chute in the same manner as the grain from a car is shoveled or dumped into the chute, from whence it could be elevated to the hopper of the hopper-scale, and from thence delivered by a spout into a wagon standing on a road-way on the opposite side of the building. The railroad track is a mere way upon which the car runs, as the road is the way upon which the wagons might run; and in this combination the railroad track, which allows a car loaded with grain to be run into or along-side the elevator building, and from which the grain is taken, performs no function and produces no result which it did not do when it brought the car to the elevator building, so that the grain it contained could be elevated to the hopper-scale, and thence discharged into a bin; and the railroad track, which carries the car which receives the grain from the hopper, performs no different function than it does when it furnishes the way for the car which receives the grain from the bins, in an elevator building. Indeed, I do not see how the device covered by this patent and claims in any essential sense differs from the ordinary grain elevator buildings located along-side of a navigable stream, as they have been for many years past, with a railroad track on one side, and the navigable stream on the other side. The tracks allow the car to bring the grain into or along-side the elevator building; the elevating apparatus takes the grain from the cars into bins, weighing it as it is delivered into the bins; and from the bins it is run by delivery spouts into ships in the water, perhaps weighing it again in its passage to the ship from the bins. And I cannot see that the car to be loaded, or the track on which the car stands, performs any function different from the warehouse bins, or the ship, or a car standing on a railroad track and loaded from bins in an elevator.

The former order overruling the demurrer in these cases is set aside, the demurrer sustained, and the bills dismissed for want of equity.